AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
May 22 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
Green Apple iPhone )
Model: Unknown )
Seized as FP&F: 2024255400012201 Item: 002 )

Case No. 24MJ8458

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   telephone   *(specify reliable electronic means)*.

Date:   05/21/2024   

*Judge's signature*

City and state:   El Centro, California       HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Green Apple iPhone
               Model: Unknown
               Seized as FP&F: 2024255400012201 Item: 002
               Seized from Denis SUBKHANGULOV
               **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of April 1, 2024, up to and including April 16, 2024, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Green Apple iPhone
Model: Unknown
Seized as FP&F: 2024255400012201 Item: 002
Seized from Denis SUBKHANGULOV
**(Target Device #1)**

**A-2:** Blue Huawei Cellphone
Model: Unknown
Seized as FP&F: 2024255400012201 Item: 003
Seized from Jose Antonio JIMENEZ-Lopez
**(Target Device #2)**

as further described in Attachments A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Denis SUBKHANGULOV (SUBKHANGULOV) for transportation of illegal alien Jose Antonio JIMENEZ-Lopez (JIMENEZ) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California.[1] The Target Devices were seized from SUBKHANGULOV and the Material Witness on or about April 15, 2024, incident to the arrest of SUBKHANGULOV and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

---

[1] This Court previously granted a Search Warrant for the Target Device on April 22, 2024. The time limit for execution of the Search Warrant expired on May 6, 2024 and the search was not completed within that time frame due to a clerical error in processing. Therefore, this Affiant is now requesting a Search Warrant based on identical probable cause in order to execute the search.

1

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain

communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law

enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

 a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

 c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

 d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On April 15, 2024, the Calexico Station's Anti-Smuggling Unit (ASU) was conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility (AOR) approximately 25 miles east of Calexico, California. This area of the border region consists mainly of spotted brush and open desert. In this area, there is a fence on the International Boundary that is approximately 15 feet tall. Interstate 8 (I-8) is

4

approximately one-half mile north of the International Boundary and runs parallel to it as well.

11. At approximately 8:18 p.m., Border Patrol Agent (BPA) L. Schwatner, who was assigned to the Remote Video Surveillance System (RVSS) room, observed one suspected illegal alien running north from the border towards Drop 2, drop is a hydraulic structure constructed across a canal to lower down its water level. BPA Schwatner relayed this information via service radio to ASU agents in the field. BPA Schwatner maintained visual of the suspected illegal alien as he approached Drop 2, crossed Drop 2, and ran to I-8.

12. At approximately 8:27 p.m., BPA W. Carlton, who was driving an unmarked Border Patrol Service vehicle, observed a vehicle slowing down and coming to a stop on the shoulder of the I-8 eastbound lanes north of the suspected illegal alien. From the RVSS room, BPA Schwatner then advised that the suspected illegal alien was running toward the stopped vehicle. BPA Schwatner observed the suspect illegal alien board the backseat of the crossover style SUV and then immediately get out of the vehicle and run across the eastbound lanes of I-8. Supervisory Border Patrol Agent (SBPA) A. Gaytan, who was driving a fully marked Border Patrol Service vehicle, pulled in behind the stopped vehicle, and contacted the driver, later identified as, SUBKHANGULOV. SBPA Gaytan determined that SUBKHANGULOV was a Russian citizen in the United States claiming asylum. SBPA Gaytan placed SUBKHANGULOV under arrest for 8 USC 1324 Alien Smuggling. BPA T. Donahue arrived and contacted the suspected illegal alien, later identified as, JIMENEZ, in the median of I-8. JIMENEZ was determined to be a Mexican citizen illegally present in the United States. All subjects were transported to the Calexico Border Patrol Station for further processing and interviews.

13. Principal SUBKHANGULOV stated he understood his rights in the English language which was interpreted in the Russian language and he was willing to provide a statement without the presence of an attorney. A Russian interpreter from U.S. Customs and Border Protection interpreter services was used via cellphone for this interview.

|   |   |
|---|---|
| 1 | SUBKHANGULOV stated he is a citizen of Russia and currently resides at a Motel 6 room |
| 2 | located in Thousand Oaks, California. SUBKHANGULOV stated he is currently living |
| 3 | with his girlfriend and has been unemployed for approximately one week. |
| 4 | SUBKHANGULOV stated he legally entered the United Stated (U.S) through Los Angeles |
| 5 | Airport (LAX) with a tourist visa and currently has a valid U.S. Employment Authorization |
| 6 | visa. SUBKHANGULOV stated he has requested asylum from the U.S. government and |
| 7 | is awaiting his next immigration hearing. |
| 8 | 14. SUBKHANGULOV admitted today he agreed to pick up three subjects from |
| 9 | the desert and transport them further north into the U.S. for monetary gain. |
| 10 | SUBKHANGULOV stated he was offered this job through Craigslist and was promised |
| 11 | payment of approximately $900 United States Dollars (USD) for picking up and |
| 12 | transporting the three subjects to Los Angeles, California. SUBKHANGULOV stated he |
| 13 | did not know it was a crime to pick up and transport illegal aliens in the U.S., but claimed |
| 14 | monetary necessity motivated him to commit today's action of attempting to pick up three |
| 15 | subjects from the desert and drive them further north into U.S. |
| 16 | 15. SUBKHANGULOV stated he contacted two subjects that guided him via |
| 17 | cellphone to the location where he was attempting to pick up the three subjects on the side |
| 18 | of the road, but only observed one subject on the side of the road that walked up to his |
| 19 | vehicle. SUBKHANGULOV spoke to two unknown individuals via cellphone and |
| 20 | mentioned he was promised to get paid in cash after he successfully transported the three |
| 21 | subjects to Los Angeles, California. SUBKHANGULOV stated he was provided three |
| 22 | distinct locations by the unknown individuals on where to pick up the subjects he attempted |
| 23 | to pick up and transport to Los Angeles, California. |
| 24 | 16. Material Witness JIMENEZ stated he is a citizen of Mexico. JIMENEZ stated |
| 25 | he traveled to Mexicali with the intent to illegally cross into the United States and his |
| 26 | destination was Las Vegas, Nevada. JIMENEZ stated that arrangements were done for |
| 27 | him before he traveled to Mexicali. JIMENEZ was to pay to $10,000 USD to be smuggled |
| 28 | to the United States illegally. JIMENEZ stated $500.00 USD were already paid upfront |

and $9,500 USD remained to be paid upon his arrival to Las Vegas. JIMENEZ stated he was instructed to climb over the border fence and run towards the highway and wait for a grey colored vehicle to arrive that would pick him up. JIMENEZ stated he boarded the wrong vehicle, but the vehicle he attempted to board matched the description given to him by the smugglers.

17. During a search incident to arrest of SUBKHANGULOV and the Material Witness, Agents located two cellphones: one green Apple iPhone (Target Device #1) was located in SUBKHANGULOV'S hand by BPA A. Gaytan and SUBKHANGULOV claimed ownership of this cellphone. BPA T. Donahue located a blue Huawei Cellphone (Target Device #2) in JIMENEZ's hand at the time of arrest and JIMENEZ claimed ownership of this cellphone. All cellphones were seized as evidence.

18. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on April 1, 2024, up to and including April 16, 2024, the day after the arrest of SUBKHANGULOV and the Material Witness.

## METHODOLOGY

19. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//

## CONCLUSION

22. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that SUBKHANGULOV and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by SUBKHANGULOV, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 21st day of May, 2024.

_____ 5:47 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-1:**</u>            Green Apple iPhone
            Model: Unknown
            Seized as FP&F: 2024255400012201 Item: 002
            Seized from Denis SUBKHANGULOV
            **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Blue Huawei Cellphone
Model: Unknown
Seized as FP&F: 2024255400012201 Item: 003
Seized from Jose Antonio JIMENEZ-Lopez
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of April 1, 2024, up to and including April 16, 2024, and is limited to the following:

- a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

- b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

- c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

- d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

- e. tending to identify the user of, or persons with control over or access to, the Target Device;

- f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.